*WYATT EARP and others v. W. H. RICHARDSON and others..

*Contract--Principal and Agent--Adverse Possession--Statute of' Limitations--Demand.*

1. Where E delivered a note of H to his son with instructions to go to H and buy a mule and enter the price of the mule on the note as a. credit, and the son entered into a bargain with R to buy a horse for $125, with the understanding that if R did not collect that amount out of the note by a certain time, he was to have his choice to take the horse back or take $125 for him ; *Held*, that the legal effect of the transaction was to place the note with R as a security for the price of the horse and the property of the note remained in E.

2. A subsequent agreement between the son of E and R by which it was agreed that R "might keep the note for the horse," does not. alter the relations existing between the parties.

3. In such case the statute of limitations does not bar, because, (1) R could not hold the note adversely to E until after a demand ; (2) the statute would not begin to run until after R had collected the note.

CIVIL ACTION, tried at Fall Term, 1877, of WILSON Superior Court, before *Eure, J.*

The plaintiffs brought this action to recover, an amount alleged to be due on account of a certain note executed by Henderson Hocutt. The Referee to whom the case was referred found the following facts:—

1. Henderson Hocutt executed a deed of trust to the defendant, J. M. Taylor, on the 9th of January, 1867, conveying real and personal property to be sold to pay his debts.

2. The trustee sold the property and paid all the debts mentioned in the deed, except the note which is the subject of this controversy.

3. The plaintiff John Earp was a legatee of one William

---

* Smith, C. J. having been of counsel did not sit on the hearing of this case.

Earp, and received said note in payment of a legacy be-queathed to him by the will of William Earp.

4. John Earp delivered the note to his son, Taylor Earp, to buy a mule of Henderson Hocutt, one of the makers of the note, and told his son to credit the note with the price of the mule. Taylor Earp then went to Hocutt to buy a mule, but Hocutt told him, he had no mule to sell. Taylor then offered the note to sundry persons at $125 to $150, and tried to buy a horse of other persons, with the note; and after keeping the note about three weeks, he did get a horse of defendant, Richardson, valued at $125 in March, 1870, when the following paper was executed; "This is to certify that I, Taylor Earp, have given to W. H. Richardson, one note against Henderson Hocutt and D. W. Bunn, payable to William Earp, for five hundred dollars, given March, 13th, 1858, for one bay horse, five years old, which I, Taylor Earp, do promise, if said Richardson fails to collect one hundred and twenty-five dollars out of said note by the 25th of December next, that I will give the said Richardson his choice to take one hundred and twenty-five dollars, or take back the horse. March, 30th, 1870." Signed by Taylor Earp, and witnessed by J. R. Nowell.

5. Richardson did not know that John Earp laid any claim to the note, but traded with Taylor Earp as the one in possession and the owner of the note.

6. In the fall of 1870, Taylor Earp agreed with Richardson that he might keep the note for the horse, and Taylor Earp afterward sold the horse to one W. W. Richardson.

7. Subsequently John Earp sold his claim to the note to his co-plaintiff, Wyatt Earp, for $200 (and other articles contained in a transfer to said Wyatt) knowing that it was in the possession of defendant Richardson.

8. John Earp never demanded the note of Richardson, but knew that in the fall of 1870, his son had bought a horse of defendant with the note, and that defendant claim-

ed the note adversely. He did not disavow the act of his son, nor did he know the nature of the agreement between his son and Richardson.

9. The summons in this action was issued on the 29th of March, 1875.

The plaintiffs filed exceptions to the report of the Referee, which were overruled by His Honor, and the ruling of the Referee,—that the right of action of the plaintiffs, was barred by the statute of limitations, and if the statute did not apply, that the plaintiffs were bound by the acts of Taylor Earp, their agent,—was sustained, and judgment rendered in favor of defendant, Richardson, against his co-defendant, J. M. Taylor, trustee, for the amount of the note. From which judgment the plaintiffs appealed.

*Messrs. Gilliam & Gatling* and *Geo. M. Smedes*, for plaintiffs.

*Messrs. Busbee & Busbee*, for defendants.

READE, J. The claim of the defendant, Richardson, to realize nearly one thousand dollars for a one hundred and twenty-five dollar horse, provokes scrutiny, to say the least. One William Earp held a note on one Hocutt for $500. William Earp died, and said note came into the hands of his son John, plaintiff, as a legacy. The plaintiff, John, delivered the note to his son Taylor Earp with instructions to go to Hocutt, the maker of the note, and buy a mule, and enter the price of the mule upon the note as a credit. The principal and interest of the note were then about $860.

The legal effect of that transaction between the plaintiff, John, and his son, was to leave the *property* in the note in the said plaintiff, with a power in the son to appropriate enough of it to his own use to pay the maker, Hocutt, for a mule and enter the amount as a credit on the note and then to return the note to the plaintiff, John.

Failing however to get a mule from Hocutt, the son Tay-lor Earp "took the liberty" of entering into a bargain with defendant Richardson for a horse at $125, and gave him the note with the understanding that if Richardson did not collect $125 out of said note by the 25th of the next December, he was to have his choice to take the horse back or to take $125 for him.

The legal effect of this contract (supposing the son Taylor Earp to have had the power to make it at all) was to place the note with Richardson as a security for the $125, and the property in the note remained in the plaintiff, John Earp. In opposition to this, it is insisted that the note itself was given to Richardson as the payment of the price of the horse if he thought proper so to regard it. But this is not true. There was no agreement that he was to collect the whole of the note and have it all, but if he did not collect $125 by a given time "out of the note" then he was to have, not the note, but $125 or the horse back again. This is not only the proper construction of the words used, but a sub-sequent transaction shows that the parties understood that the note itself was not given for the horse ; for subsequently, and before December, it was agreed between the son and Richardson, that Richardson "might keep the note for the horse," which agreement would have been unnecessary if it had been so agreed in the first instance.

What was the effect of this last contract,—that Richard-son was to have the note for the horse ? We have already seen that when the plaintiff John parted with the note to his son, it was upon the express understanding that his son was to have enough of it to buy a mule of the maker of the note and to enter the amount as a credit on the note. This was a limited power by the very terms of it, and the son could not exceed it, and any one dealing with him was obliged to look out for his power, as the note was neither pay-able to him nor endorsed to him ; for although the note was

negotiable, yet it was past due and dishonored, and put the purchaser upon inquiry. The son had no power to use the note to buy a horse of any one else except Hocutt. But suppose we allow a liberal construction and say that as it was the plaintiff's intention to give the son so much of the note as would buy him a horse, it is not a matter of substance whether he bought the horse of one man or another; still we could not give the son any larger power over the note in trading with Richardson than if he had traded with Hocutt; and that was, not to pay for the horse *with* the note, but *out of* the note.

Our opinion therefore is, that when Richardson took the note, whether under the first contract or under the second, he took it as a security for the price of the horse, $125. This view settles the other question as to the statute of limitations; for if Richardson held the note as a security only then he was bailee, or trustee, for the plaintiff John, and the statute did not begin to run until after a demand. It is true that the Referee' finds that he held adversely, but he also finds that the plaintiff made no demand, and as a question of law, the defendant could not hold adversely until after a demand. He could not change his character, of his own will. Indeed the statute would not bar any way, because Richardson has not yet collected the note, but the same is due and unpaid. There is error. The judgment below is reversed.

There will be judgement in this Court in favor of Richardson against the defendant, trustee, Taylor, for the price of the horse, $125 and interest from the date of the sale. And there will be judgment in favor of the plaintiff Wyatt Earp against the defendant trustee for the remainder due on said note. The Clerk of this Court will make the calculation and report, for which he will be allowed.

$5.00. The costs will be paid by the plaintiff Wyatt Earp.

PER CURIAM.                              Judgment accordingly.